United States District Court
For the Northern District of California

1
2
3
4
5
6
7                        IN THE UNITED STATES DISTRICT COURT
8                     FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10    JAIME IGNASCIO ESTRADA,        )    No. C 08-2801 MMC (PR)
                                     )
11              Plaintiff,           )    **ORDER GRANTING DEFENDANTS'**
                                     )    **MOTIONS FOR SUMMARY JUDGMENT;**
         v.                          )    **GRANTING PLAINTIFF'S MOTION TO**
12                                   )    **AMEND DECLARATIONS; DENYING**
      LINDA CAROL ROWE, M.D.,        )    **PLAINTIFF'S ADMINISTRATIVE**
13    MICHAEL SAYRE, M.D.,           )    **REQUEST; DENYING PLAINTIFF'S**
      NANCY ADAM, M.D.,              )    **MOTION TO STRIKE**
14                                   )
                Defendants.          )    **(Docket Nos. 112, 116, 120, 128, 129, 131, 136)**
15    _____)

16          On June 5, 2008, plaintiff, a California prisoner incarcerated at Pelican Bay State

17   Prison ("PBSP") and proceeding pro se, filed against Linda Rowe, M.D. ("Dr. Rowe") and

18   Michael Sayre, M.D. ("Dr. Sayre"), two physicians employed at PBSP, the above-titled civil

19   rights action under 42 U.S.C. § 1983, claiming deliberate indifference to his serious medical

20   needs and seeking injunctive relief.  Subsequently, the Court granted plaintiff's request to

21   amend his complaint to include a claim for damages, and plaintiff thereafter filed his First

22   Amended Complaint ("FAC").  After defendants filed an answer to the FAC, the Court

23   referred the matter to Magistrate Judge Nandor J. Vadas for mediation proceedings; the

24   parties were unable to reach an agreement.  Plaintiff then moved to file a supplemental

25   complaint alleging ongoing inadequate medical care and naming Nancy Adam, M.D. ("Dr.

26   Adam"), as an additional defendant.  The Court granted plaintiff's request and directed

27   defendants to file, if appropriate, a motion for summary judgment or other dispositive motion

28   with respect to the claims found to be cognizable in the FAC and supplemental complaint.

On August 27, 2010, defendants filed three separate motions for summary judgment. By order filed January 25, 2011, the Court, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, denied the motions without prejudice, to permit the parties to resolve pending discovery matters. On February 28, 2011, plaintiff reported the parties were able to resolve their discovery disputes and that plaintiff would not seek to compel further discovery, after which the Court afforded defendants leave to renew their motions for summary judgment.

Now before the Court are: (1) Dr. Rowe's renewed motion for summary judgment; (2) Dr. Adam's renewed motion for summary judgment; and (3) Dr. Sayre's renewed motion for summary judgment. Plaintiff has opposed the motions, and defendants have filed replies. Also before the Court are: (1) plaintiff's motion to amend two of his declarations; (2) plaintiff's request for administrative relief; (3) plaintiff's request for judicial notice; and (4) plaintiff's motion to strike defendants' reply briefs.

**BACKGROUND**

In the FAC and supplemental complaint, plaintiff alleges he suffers from degenerative disc disease and sciatica, causing him chronic back pain and mobility problems. Plaintiff claims the medications prescribed for him at PBSP failed to lessen his pain or improve his mobility. He alleges defendants denied his requests for additional diagnostic procedures, alternate medications, and referral to a specialist.

Plaintiff claims Dr. Rowe provided constitutionally inadequate care from June 2006 through August 2008, the time during which Dr. Rowe acted as plaintiff's primary care physician. Plaintiff claims Dr. Adam provided constitutionally inadequate care from October 2008 to the time plaintiff filed his supplemental complaint. Plaintiff claims Dr. Sayre, in his capacity as PBSP's Chief Medical Officer, acted with deliberate indifference to plaintiff's serious medicals needs.

The evidence submitted by the parties in support of and opposition to defendants'

*United States District Court*
For the Northern District of California

2

motions for summary judgment shows the following[1]:

Dr. Rowe treated plaintiff for the first time on March 28, 2006, in connection with a sick call. (Rowe Decl. Supp. Mot. Summ. J. ("Rowe Decl.") ¶ 6.) She served as plaintiff's primary care physician from that date until August 6, 2008. (Id. ¶ 7.) Over that time, she interacted directly with plaintiff during 26 to 27 medical visits. (Id. ¶ 8.) Dr. Rowe treated plaintiff for a variety of medical issues, including fatigue, allergic rhinitis, nose bleeds, pterygium (tissue growth on eye), heartburn, H Pylori (stomach infection), high blood pressure, headaches, involuntary arm movement, shoulder discomfort, and back pain. (Id. ¶¶ 9-22.)

Dr. Rowe first saw plaintiff for his complaints of back pain on June 22, 2006. (Id. ¶ 11.) At that time, plaintiff claimed to have low back pain that had been worsening over the previous six months and was radiating to his hip with some numbness to his leg. (Id.) Dr. Rowe noted, however, plaintiff walked well, got up and down from his chair without difficulty, and had full range of motion in his back. (Rowe Decl., Ex. A at 88.) She nonetheless ordered X-rays and gave plaintiff Tylenol for the pain he described. (Id. at 61.)

Dr. Rowe reviewed the X-rays with plaintiff on July 20, 2006. (Rowe Decl. ¶ 11.) She informed him that the X-rays showed he had mild arthritis at L3-L4 and that otherwise his back was normal. (Id. ¶ 11 & Ex. A at 80.) She continued him on Tylenol for pain as he was not able to use nonsteroidal anti-inflammatory drugs due to his recent treatment for a stomach infection. (Id. ¶ 11 & Ex. A at 65.)

Dr. Rowe saw plaintiff for complaints of back pain again on April 10, 2007. (Rowe Decl. ¶ 14.) She prescribed Tylenol, Elavil, and Robaxin, a muscle relaxant. (Id. ¶ 14 & Ex. A at 546, 551-52.)

Dr. Rowe saw plaintiff again on August 20, 2007, October 4, 2007, and October 25, 2007, for complaints of low back pain, gastroesophageal reflux, and allergic rhinitis. (Rowe Decl. ¶ 17 & Ex. A at 1127, 1133, 1150-51, 1171, 1177.) She continued him on Tylenol for

---

[1] The facts are undisputed unless otherwise noted.

United States District Court

For the Northern District of California

arthritis and also prescribed Motrin as an alternate pain medication.  (Id.)

Dr. Rowe saw plaintiff again on December 18, 2007 for low back pain.  (Rowe Decl. ¶ 19.)  She diagnosed him with continuing arthritis and prescribed Salsalate for the pain.  (Id. ¶ 19 & Ex. A at 509.)  She advised him there was no single medication that would work indefinitely and that there was no cure.  (Id. ¶ 19 & Ex. A at 1094.)  As of the time of that visit, plaintiff had been given Motrin, Naprosyn, Voltaren, Elavil, Tylenol, and muscle relaxants for back pain.  (Id.)  She also reminded him that nonsteroidal anti-inflammatory drugs were dangerous in the long term as they affect the gastrointestinal tract and kidneys.  (Id.)  Dr. Rowe determined plaintiff did not need to see a specialist at that time.  (Id. ¶ 19 & Ex. A at 1096.)

Dr. Rowe again saw plaintiff for back pain on February 1, 2008.  (Rowe Decl. ¶ 20 & Ex. A at 1051, 1057.)  She continued him on Salsalate and Elavil.  (Id. ¶ 20 & Ex. A at 508.)

On August 6, 2008, Dr. Rowe saw plaintiff for high blood pressure.  (Rowe Decl. ¶ 22 & Ex. A at 1382-83.)  To help lower his blood pressure, she discontinued the Salsalate and other nonsteroidal anti-inflammatory drugs, and prescribed Tylenol for his back pain.  (Id.)  After that visit, Dr. Rowe had no other direct involvement in plaintiff's medical care.  (Id. ¶ 23.)

Dr. Adam first treated plaintiff on October 6, 2008 when she saw him for an appointment relating to his blood pressure.  (Adam Decl. Supp. Mot. Summ. J. ("Adam Decl.") ¶ 6.)  At that appointment, Dr. Adam and plaintiff also discussed his allergies and complaints of back pain.  (Id.)  For the pain, Dr. Adam instructed plaintiff to continue taking Acetaminophen and Salsalate as needed, as well as Amitriptyline as scheduled.  (Id. ¶ 6 & Ex. A at 713-14)  She also recommended exercises and stretches.  (Id.)

On December 15, 2008, Dr. Adam saw plaintiff for a follow-up after he had been seen for a neurology consult (Adam Decl. ¶ 9); plaintiff stated his back pain had decreased with Salsalate and Tylenol.  (Id. ¶ 9 & Ex. A at 692-95.)  Dr. Adam also continued him on Elavil and prescribed Indocin "just for the days of really bad pain."  (Id.)  She advised him to increase his physical conditioning, as he stated he was not exercising.  (Id.)  Plaintiff

1    expressed an interest in physical therapy, and Dr. Adam recommended he first increase his

2    physical conditioning and start a regular exercise routine. (Id.)

3           On January 29, 2009, Dr. Adam saw plaintiff for his hypertension. (Adam Decl.

4    ¶ 10.) At that visit, he complained of continued back pain and a tingling sensation on the left

5    side of his back, as well as rib pain and other joint pains. (Id.) Dr. Adam diagnosed him as

6    having minimal degenerative joint and disc disease; she further observed that he had

7    inconsistent symptoms. (Id. ¶ 10 & Ex. A at 1693-97.) She instructed him to increase his

8    walking and to get on a regular exercise routine so she could then assess whether he would

9    benefit from physical therapy. (Id.) She increased his dose of Salsalate, and he agreed to try

10   discontinuing Elavil to avoid over-medicating. (Id.)

11          On February 18, 2009, plaintiff submitted a Disability Placement Program

12   Verification request form. (Adam Decl. ¶ 11 & Ex. A at 1796.) Dr. Adam determined

13   plaintiff's condition did not rise to the level of a disability, and denied the request. (Id.)

14          On March 4, 2009, Dr. Adam saw plaintiff again for his hypertension and complaints

15   of back pain. (Adam Decl. ¶ 12.) He described an exacerbation of his pain and stated that no

16   medication had given him significant relief. (Id. ¶ 12 & Ex. A at 1406-08.) Dr. Adam

17   continued plaintiff on Tylenol and Salsalate. (Id.) She discussed Robaxin with him but

18   decided to hold off prescribing it in light of his other medical issues. (Id.) She referred

19   plaintiff to physical therapy, but the referral was denied on the ground there was no evidence-

20   based reason for the therapy. (Id. ¶ 12 & Ex. A at 1811.)

21          On July 9, 2009, Dr. Adam had one other appointment with plaintiff, regarding left

22   knee pain resulting from a twisted ankle. (Adam Decl. ¶ 13.) After that appointment, Dr.

23   Adam had no other direct involvement in plaintiff's medical care. (Id.)

24          In July 2008, plaintiff had a lumbar spine X-ray. (Adam Decl. ¶ 7.) The X-ray

25   showed "mild degenerative disc disease" and results indicative of muscle spasm. (Id.) These

26   findings were similar to those made in connection with the earlier X-ray taken in June 2006,

27   as well as those regarding a later X-ray taken in May 2010, which indicated little change in

28   the condition of plaintiff's back. (Id.) Plaintiff also had an MRI of his lumbar spine, on

United States District Court

For the Northern District of California

October 30, 2009.  (Decl. Sayre Supp. Mot. Summ. J. ("Sayre Decl.") ¶ 14 & Ex A at 2211.)
The findings showed plaintiff had no significant degenerative disc desiccation (reduced water
content of disk), no evidence of arachnoiditis (inflammation), no focal disc protrusion, no
evidence of spondylolisthesis (slippage of vertebra) or spondylolysis (disc space
degeneration).  (Id.)  The MRI showed plaintiff to have mild degenerative facet disease.  (Id.)
The results were otherwise normal.  (Id.)

In November 2009, plaintiff submitted another Disability Placement Program
Verification request (Sayre Decl. ¶ 15 & Ex. A at 2213), following which Dr. Williams, a
PBSP staff physician, found no disability could be verified because plaintiff had just had a
normal MRI of the spine and no mobility issues had been identified.  (Id.)

As noted, Dr. Sayre is PBSP's Chief Medical Officer.  (Decl. Sayre Supp. Mot.
Summ. J. ¶ 1.)  In that capacity, Dr. Sayre reviewed plaintiff's Disability Placement Program
Verification requests and the staff physicians' denials of those requests.  (Id. ¶¶ 13, 15.)  Dr.
Sayre also saw plaintiff on three visits, all in response to plaintiff's inmate appeals.  (Id. ¶¶ 7,
10, 11.)

The first such appeal involved plaintiff's complaints against Dr. Rowe.  (Id. ¶ 7.)
Plaintiff alleged therein that Dr. Rowe: (1) limited the scope of her sick calls to one medical
issue, and (2) had poor skills in her dealings with inmates.  (Sayre Decl. Ex. B at 630.)  On
November 8, 2006, Dr. Sayre met with plaintiff regarding those complaints.  (Id.)  Dr. Sayre
noted plaintiff's first contention was not true, and that Dr. Rowe followed the community
standard of typically addressing three inmate complaints per sick call.  (Id.)  Regarding the
second issue, Dr. Sayre determined there likely were cultural differences between plaintiff
and Dr. Rowe and that plaintiff's complaints were not consistent with Dr. Sayre's many
dealings with Dr. Rowe.  (Id.)  Consequently, Dr. Sayre denied the appeal.  (Id.)

Dr. Sayre saw plaintiff again on April 23, 2008 for an Americans with Disabilities Act
("ADA") appeal.  (Id. ¶ 10.)  During that visit, Dr. Sayre determined plaintiff had no ADA-
level disabilities and required no accommodation.  (Id.)  Dr. Sayre's determination was based
on careful questioning regarding the standard activities of daily living and plaintiff's ability

6

to accomplish them.  (Id.)

Dr. Sayre saw plaintiff again on June 18, 2008, in response to an inmate appeal in which plaintiff requested Dr. Rowe be removed as his primary care physician.  (Id.   ¶ 11.) Because the matter was not within the scope of the inmate appeal process, the appeal was denied.  (Id.)  During that visit, however, Dr. Sayre asked plaintiff about his conflict with Dr. Rowe.  (Id.)  Dr. Sayre determined that the conflict arose from a disagreement between what plaintiff believed to be his medical condition and what both Dr. Rowe and Dr. Sayre concluded was typical low back pain.  (Id.)  Dr. Sayre determined Dr. Rowe was providing proper treatment.  (Id.)  Dr. Sayre had no other in-person contact with plaintiff.  (Id. ¶ 16.)[2]

On September 10, 2010, plaintiff filed a state habeas petition in the Del Norte County Superior Court.  (Defs.' 2/25/2011 Req. for Jud. Not., Ex. C.)  As in the instant action, plaintiff's state habeas petition raised a constitutional claim of deliberate indifference to his back pain.  (Id.)  In the state action, the court ordered the California prison medical receiver to file a return to the petition, which return was filed on or about November 18, 2010.  (Pl.'s 2/14/2011 Mot. for PI, Ex. A.)  In his return, the receiver concluded plaintiff's condition was not severe and that California Department of Corrections and Rehabilitation ("CDCR") medical staff had provided plaintiff with proper care.  (Id. at 4-5.)  Nevertheless, "to ensure [p]etitioner's health care needs continue[d] to be fully and properly addressed prospectively," the receiver adopted the Corrective Action Plan ("CAP") proposed by the "reviewing physician," Dr. Beisenherz, which CAP included a consultation with a specialist in physiatry/pain management.  (Id. at 5.)  Thereafter, on or about January 13, 2011, plaintiff was evaluated by G. Williams, M.D. ("Dr. G. Williams"), a "physical medicine and rehabilitation doctor specializing in disabilities and painful conditions."  (Pl.'s 2/14/2011 Mot. for PI, Ex. C.)

---

[2] Plaintiff has submitted copies of five additional inmate appeals reviewed by Dr. Sayre in 2009 and 2010.  (Pl.'s Exs. Supp. Opp. to Sayre Mot. Summ. J.)  The record of those appeals shows that, in each instance, Dr. Sayre promptly reviewed plaintiff's complaints, reviewed his health record, and issued a decision.  (Id.)  Indeed, four of the five appeals were granted or partially granted.  (Id.)

United States District Court
For the Northern District of California

Dr. G. Williams noted that the comprehensive radiologic studies of plaintiff's lumbar spine were negative for spinal mediated pain. (Id.) He did, however, diagnose "chronic myofascial related pains causing low back pain." (Id.) According to Dr. G. Williams, "[l]ack of an adequate stretching program ha[d] contributed to [plaintiff's] condition." (Id.) He recommended a physical therapist evaluate plaintiff's exercise program "to ensure that he is not performing it incorrectly." (Id.) In his opinion, nonsteroidal anti-inflammatory drugs and Tylenol were appropriate medications. (Id.) In the event plaintiff's pain worsened, he recommended "trigger point injections" during "painful episodes." (Id.) Plaintiff now receives injections for severe pain. (Pl.'s Decl. Supp. Opp. to Sayre Mot. Summ. J. ¶ 31.)

**DISCUSSION**

I.      Motion for Summary Judgment

      A.      Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

**United States District Court**
For the Northern District of California

1    For purposes of summary judgment, the court must view the evidence in the light most

2    favorable to the nonmoving party; if the evidence produced by the moving party conflicts

3    with evidence produced by the nonmoving party, the court must assume the truth of the

4    evidence submitted by the nonmoving party.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158

5    (9th Cir. 1999).  The court's function on a summary judgment motion is not to make

6    credibility determinations or weigh conflicting evidence with respect to a disputed material

7    fact.  See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

8    1987).

9        A verified complaint may be used as an opposing affidavit under Rule 56, as long as it

10   is based on personal knowledge and sets forth specific facts admissible in evidence.  See

11   Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's

12   verified complaint as opposing affidavit where, although verification not in conformity with

13   28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct,

14   and allegations were not based purely on information and belief but rather on personal

15   knowledge).

16       B.    Deliberate Indifference to Serious Medical Needs

17       Deliberate indifference to a prisoner's serious medical needs violates the Eighth

18   Amendment's proscription against cruel and unusual punishment.  See Estelle v. Gamble,

19   429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an

20   examination of two elements: "the seriousness of the prisoner's medical need and the nature

21   of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

22   1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136

23   (9th Cir. 1997) (en banc).  A "serious" medical need exists if the failure to treat a prisoner's

24   condition could result in further significant injury or the "unnecessary and wanton infliction

25   of pain."  Id. (citing Estelle v. Gamble, 429 U.S. at 104).  A prison official is deliberately

26   indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that

27   risk by failing to take reasonable steps to abate it.  Farmer v. Brennan, 511 U.S. 825, 837

28   (1994).  The prison official must not only "be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id.  Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment.  Id. at 1059.  Nor does "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment" amount to deliberate indifference. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  In particular, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference.  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must show "the course of treatment the doctors chose was medically unacceptable under the circumstances," such treatment was chosen "in conscious disregard of an excessive risk to the plaintiff's health," and the delay resulted in harm to the plaintiff.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

C.      Analysis

The record amply demonstrates the physician defendants here provided plaintiff with adequate care.  Defendants, as well as other PBSP physicians and an outside physician, examined plaintiff on multiple occasions and provided him treatment for his medical needs. As set forth above, plaintiff was seen at numerous medical visits for low back pain between June 2006 and March 2009.  The evidence demonstrates defendants continuously assessed plaintiff's symptoms and recommended treatment according to his clinical presentation.

In addition to the examinations they performed, PBSP physicians ordered and followed up on the results of radiographic and other testing procedures.  In particular, plaintiff had X-Rays of his back in 2006, 2008, and 2010.  (Adam Decl. ¶ 7.)  All showed mild arthritis.  (Id.)  Further, an MRI of plaintiff's lumbar spine was ordered in 2009.  (Sayre Decl. ¶ 14.)  The results showed mild degenerative facet disease and an otherwise normal back.  (Id.)  These various diagnostic results, which plaintiff does not dispute, further

United States District Court

For the Northern District of California

1    demonstrate defendants provided appropriate medical care.

2         In addition to treatment for his back problems, the record shows PBSP physicians saw

3    plaintiff on multiple occasions for primary care visits as well as treatment for allergic rhinitis,

4    nose bleeds, pterygium (tissue growth on eye), heartburn, H Pylori (stomach infection), high

5    blood pressure, headaches, involuntary arm movement, shoulder discomfort, and knee pain.

6    (Rowe Decl. ¶¶ 9-22; Adam Decl. ¶ 13.)  Dr. Rowe reports that she alone saw plaintiff at 26

7    to 27 medical visits in a 29-month period.  (Rowe Decl. ¶¶ 7, 8.)

8         The record also shows pain medication was regularly provided.  In addition to

9    Tylenol, plaintiff was given Motrin, Naprosyn, Voltaren, Elavil, Salsalate, Amitriptyline,

10   Indocin, and Robaxin for his back pain.  (Rowe Decl. ¶ 19; Adam Decl. ¶¶ 6, 9.)  Plaintiff

11   reported benefits from many of these treatments.  (Adam Decl. Ex. A at 694, 859, 1685; Pl.

12   Decl. Supp. Opp. Rowe Mot. Summ. J. ¶ 24.)  While plaintiff claims he asked for and was

13   denied other pain medications, he admits his requested medications were either

14   contraindicated or were on the non-formulary list.  (Pl.'s Decl. Supp. Opp. Rowe Mot.

15   Summ. J. ¶¶ 12, 27; FAC ¶ 16.)

16        Finally, the record demonstrates that plaintiff received prompt and thorough reviews

17   of his various inmate appeals and had several in-person interviews regarding such appeals.

18   Appeal reviewers regularly investigated plaintiff's complaints, reviewed his health care

19   record and appeal history, and determined prison health care staff was properly providing for

20   plaintiff's medical needs.  Plaintiff presents no evidence that defendants failed to respond to

21   his medical appeals.

22        The above analysis is not altered by the fact that plaintiff eventually saw an outside

23   specialist, Dr. G. Williams, who recommended trigger point injections.  At most, such

24   recommendation evidences a difference of opinion regarding the type of pain treatment

25   plaintiff should receive.  A mere "difference of medical opinion . . .  [is] insufficient, as a

26   matter of law, to establish deliberate indifference."  Jackson v. McIntosh, 90 F.3d 330, 332

27   (9th Cir. 1996).  Further, the diagnosis given by the specialist was consistent with that made

28   by defendants here, and trigger point injections were only recommended in the event the pain

11

United States District Court

For the Northern District of California

worsened.  (See Pl.'s 2/14/2011 Mot. for PI, Ex. C.)  Plaintiff admits he is now receiving the trigger point injections.  (Pl. Decl. Supp. Opp. to Sayre Mot. Summ. J. ¶ 31.)  There is no evidence indicating plaintiff's condition was in any manner worsened as a result of his waiting for this particular course of treatment, let alone that the wait was the result of deliberate indifference to his condition.

In sum, considering the evidence in the light most favorable to plaintiff, the Court finds plaintiff fails to raise a triable issue of material fact as to whether defendants were deliberately indifferent to plaintiff's serious medical needs.  Accordingly, summary judgment will be granted in favor of defendants.

II.    Plaintiff's Motion to Amend

Plaintiff has filed a motion to correct mistakes in the declarations he submitted in support of his oppositions to the summary judgment motions filed by defendants Sayre and Adam.  In connection therewith, plaintiff re-writes three of the paragraphs contained in his earlier-filed declarations.  The motion will be granted, and plaintiff's declarations are deemed amended.

III.    Plaintiff's Request for Judicial Notice

Plaintiff has filed a request for judicial notice of court records in three prisoner civil rights cases either previously or now pending in this district: Madrid v. Gomez, No. 90-3094; Plata v. Schwarzenegger, No. 01-1351; and Ashker v. Sayre, No. 05-3759.  No opposition having been filed, and good cause appearing, the request will be granted.[3]

IV.    Plaintiff's Motion to Strike

Plaintiff moves to strike defendants' replies, filed in support of their respective motions for summary judgment, on the ground such briefs were untimely filed.  The Court has not relied on the reply briefs in making the above rulings on defendants' motions for summary judgment.  Accordingly, plaintiff's motion to strike such briefs will be denied as moot.

_____

[3] The Court notes, however, that none of said cases is relevant to the Court's resolution of the issues raised here.

12

V.    <u>Plaintiff's Motion for Administrative Relief</u>

Plaintiff renews his prior request for the Court to make and mail to plaintiff copies of plaintiff's oppositions to defendants' summary judgment motions.  According to plaintiff, PBSP regulations impose a 100-page limit on the number of copies PBSP will make for a prisoner, thereby precluding plaintiff from keeping a copy of the oppositions for himself.  In previously denying the request, the Court informed plaintiff he is required to complete the Clerk's Office's form request for photocopies and pay the applicable copying fees described therein; a copy of the form request was sent to plaintiff.  Plaintiff has failed to submit the Clerk's form request for photocopies along with the copying fees.  Accordingly, the renewed motion for administrative relief will be denied.

## CONCLUSION

For the foregoing reasons, the Court orders as follows:

1.  Defendants' motions for summary judgment are hereby GRANTED.  (Dkt. Nos. 112, 116, 120.)

2.  Plaintiff's motion to amend his declarations in support of his oppositions to the summary judgment motions filed by defendants Sayre and Adam is hereby GRANTED. (Dkt. No. 131.)

3.  Plaintiff's request for judicial notice is hereby GRANTED.  (Dkt. No. 128.)

4.  Plaintiff's motion to strike defendant's reply briefs is hereby DENIED as moot. (Dkt. No. 136.)

5.  Plaintiff's renewed motion for administrative relief is hereby DENIED.  (Dkt. No. 129.)

6.  The Clerk shall enter judgment in favor of all defendants and close the file.

This order terminates Docket Nos. 112, 116, 120, 128, 129, 131, and 136.

IT IS SO ORDERED.

DATED: January 9, 2012

MAXINE M. CHESNEY
United States District Judge